**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**July 13, 2012**

# In the Court of Appeals of Georgia

A12A0568. SMITH v. CURTIS.

BARNES, Presiding Judge.

Greg Smith petitioned for modification to the custody, support and visitation terms that had been established by a February 11, 2009 consent order with his daughter's mother, Cindy J. Curtis. The trial court granted Smith's petition as to the modification of his child support obligations, but terminated all "parental rights concerning custody, parenting time, and parenting rights of any type or manner" granted in the previous final order.[1] On appeal, Smith contends that the trial court erred in terminating all of his parenting rights associated with the previous order. Upon review, we affirm.

---

[1]The final order establishing custody, support and visitation is not in the record. There is merely a one-page exhibit from an earlier contempt hearing that is labeled "Page 3 Final Amended Order," which details a visitation schedule for holidays.

The evidence shows that Curtis and Smith were not married when their daughter was born, but Smith later legitimated the child. The couple shared legal custody, but had extremely contentious dealings regarding visitation with their child. On March 4, 2010, Smith filed a motion for contempt, alleging that Curtis was denying him his visitation rights. After a hearing, the trial court found Curtis in willful contempt for the denial of visitation rights, and ordered her to comply with the visitation established in the final order. Smith also contemporaneously filed a petition for modification of child support, custody and visitation, in which he alleged a material change in circumstances warranting the modification of "support and custody and/or visitation." He alleged a decrease in income, that he was now "able to spend more time with the minor child than [Curtis]," and that the child would have a more secure and stable home with him. Smith later moved to withdraw the request for change in custody, which the trial court granted without prejudice, but he still sought modification of support and visitation.

At the October 4, 2011 hearing on the modification petition, the trial court noted that the only issues for its consideration were the modification of support and visitation. At the conclusion of the hearing, the trial court commented on the extreme animosity displayed by the parents toward each other, their inability to co-parent the

2

child, and the negative impact their actions had on the child. The trial court advised Smith that he would take all of the evidence under advisement and "generate an order." Smith attempted to interrupt the trial court several times, stating that "I could bring this all to an end" and that "I have a solution." Smith's attorney advised him to "hold his tongue and see what the Court's order is and then make a decision." Smith continued to speak, and the trial court instructed him that it did not "want to hear another word" until after Smith consulted with his attorney.

After a five-minute recess, Smith returned to the courtroom and declared that "in the past [Curtis] has offered [me] the opportunity to surrender [my] parental rights to this child. If that offer is still open, [I'm] willing to do that." The trial court advised Smith that it did not have the jurisdiction to terminate his parental rights, but that it would take his assertion as an intent to not exercise "parenting time."

In its order, the trial court found that Smith was entitled to a downward modification in his child support obligations, but that it would "accept [Smith's] renunciation of [his] parental rights made in open court," and modified the final order so that Smith did not have "custody, parenting time and parental rights of any type

3

or manner, connected with the prior court order."[2] It further instructed that "[s]hould [Smith] again consider becoming a viable and positive part of his daughter's life, he may seek such modification in any court of competent jurisdiction." Smith filed a motion to set aside the trial court's order, which it denied, and he now appeals.

On appeal, Smith contends that the trial court erred in "terminating"his parental rights.[3] Although Smith contends that the trial court "terminated" his parental rights, it is clear from the record that the trial court simply modified the parenting rights provided for in the earlier consent order between Smith and Curtis. The trial court clearly advised Smith that it was without jurisdiction to terminate his parental rights Nomenclature aside, Smith contends on appeal that his offer to relinquish his parental rights was conditional upon the acceptance of Curtis, and that the trial court was required per OCGA § 15-11-94 to show unfitness, inability or exceptional circumstance.[4] We do not agree.

---

[2] Although the trial court said that it was "terminating" Smith's parental rights, it also acknowledged that it was doing so only to the extent of its jurisdiction, and could not literally "terminate [Smith's] parental rights."

[3] Smith does not contest the trial court's modification of his child support.

[4] OCGA § 15-11-94 applies to the termination of parental rights rather than the modification of custody or visitation.

A petition to change child custody should be granted only if the trial court finds that there has been a material change of condition affecting the welfare of the child since the last custody award. If there has been such a change, then the court should base its new custody decision on the best interest of the child.[5]

(Citations and punctuation omitted.) *Lynch v. Horton*, 302 Ga. App. 597, 600 (4) (692 SE2d 34) (2010); OCGA § 19-9-3 (b) ("[T]his subsection shall not limit or restrict the power of the judge to enter a judgment relating to the custody of a child in any new proceeding based upon a showing of a change in any material conditions or circumstances of a party or the child.")

"Modification of child visitation rights is a matter of discretion with the trial court. If reasonable evidence exists in the record to support the trial court's decision to change visitation rights, then the decision of that court will stand. The trial court's decision will not be overturned absent abuse of discretion." (Punctuation and footnotes omitted.) *Gildar v. Gildar*, 309 Ga. App. 730, 731-732 (710 SE2d 913) (2011). "[W]e are mindful that the Solomonic task of [making these decisions] lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility."

---

[5] OCGA § 19-9-22 (1) defines "custody" as including visitation rights.

5

(Citation and punctuation omitted.) *Lynch v. Horton*, 302 Ga. App. 597, 601 (4) (692 SE2d 34) (2010).

Here, Smith, after consulting with his trial counsel, informed the trial court that he wished to voluntarily "surrender" his parental rights, and that he had offered to do so on other occasions. The trial court informed Smith that it could not terminate his parental rights, but that it would "take that as [Smith's] intent not to exercise parenting time."[6]

Our courts have held that the voluntary surrender of physical custody over a child by the custodial parent can constitute a material change of condition. *Lodge v. Lodge*, 230 Ga. 652 (198 SE2d 861) (1973) ("The voluntary surrender by a parent of the custody of a child is a change in condition which will authorize a court to consider anew the issue of custody."); *Wilt v. Wilt*, 229 Ga. 658 (193 SE2d 833) (1972). It follows that the voluntary request to relinquish visitation, custody or other parental rights can also be deemed a material change in condition.

[T]he determination of whether there has been a voluntary surrender of . . . custody [or visitation] affecting the child's welfare, or a more

---

[6] Although, Smith had withdrawn his petition for custody modification, it was reasonable for the trial court to assume that by voluntarily requesting to relinquish his parental rights, Smith was orally reinstating his custody petition.

temporary relinquishment. . . not rising to the level of a material change in condition, is a factual question that falls within the trial court's broad discretion in these matters.

*Shotwell v. Filip,* 314 Ga. App. 93, 96-97 (1) (722 SE2d 906) (2012). In these circumstances, we cannot say that the trial court abused its discretion in finding that Smith's attempted voluntary surrender of his parental rights was a material change in condition. [7]

Regarding the best interest of the child, the trial court noted several examples of the "acrimony and rancor" between the parents and its impact on their ability to effectively co-parent the child. The trial court further found that Smith's "blind obsession [with] attacking the mother" took precedence over his parenting duties. It also found that Smith used his parenting rights to "harass, annoy, and bother the mother." The trial court found that Smith could not be a peaceful presence in the

---

[7] "Although . . . a trial court must find that a material change in circumstances has taken place before it can consider whether modification of custody is in the children's best interests, we will not remand to require the use of the word 'material' where, as here, it is manifest from the written order that the trial court considered that significant and substantial changes in circumstances had occurred." *Weickert v. Weickert*, 268 Ga. App. 624, 628 (1) (602 SE2d 337) (2004); *Ray v. Denton*, 278 Ga. App. 69, 73 (2) (628 SE2d 180) (2006) ("It is not necessary to remand this case in order for the court to use the exact language provided in the statute where the pertinent findings and conclusions have been made.")

child's life, and that the child was displaying obsessive-compulsive behavior because of the "psychological stressors" in her life. The trial court also found that, while the parenting plan in the final consent order provided for Smith to become more involved in the child's life, "[t]hat process has not progressed. . . and is no longer in the best interests of the minor child."

Under these circumstances, we find no error in the trial court's modification of Smith's custody rights.

*Judgment affirmed. Adams and McFadden, JJ., concur.*